[Civ. No. 17814.   Second Dist., Div. Three.   May 15, 1951.]

CLARA E. BLANKINSHIP, Respondent, v. H. E. BLANKINSHIP et al., Appellants.

Bailey & Poe for Appellants.

Gilligan & Pratt for Respondent.

WOOD (Parker), J.—Action for a declaration of rights to 50 shares of stock in the American Saw and Knife Works, Ltd., a corporation. The plaintiff is the mother of defendants. The stock was issued as follows: Ten shares in the names of plaintiff and defendant H. E. Blankinship as joint tenants; 30 shares in the names of plaintiff and defendant William E. Blankinship as joint tenants; and 10 shares in the names of plaintiff and defendant Louise B. West as joint tenants.

The court found that the plaintiff and defendants agreed that the stock would be issued in the names of plaintiff and defendants as joint tenants for convenience only, that plaintiff was not parting with title to said stock, and that the only purpose for holding title to said stock as joint tenants was for convenience. The judgment was that plaintiff is the owner of said stock, and that defendants hold whatever right they have in said stock as trustee(s) for plaintiff. It was ordered in said judgment that defendants assign and deliver said certificates of stock to plaintiff.

Defendants appeal from the judgment. They contend that said findings were contrary to the evidence; and that the judgment is not supported by the evidence and is contrary to law.

Prior to 1927 plaintiff and her husband owned, as community property, all the 250 shares of stock of said corporation. About 1927 said stock was transferred, in equal shares, to their four children and to plaintiff—each receiving 50 shares. (The four children are the three defendants herein, and James who is not a party to this action.) Plaintiff's husband continued to conduct the business of the corporation with the assistance of James, who is the eldest son. In 1928 the husband died, and James became president of the corporation, and conducted the business. Other members of the family rendered services in behalf of the corporation, and in 1933 the books of the corporation showed that unpaid salaries, which were payable to plaintiff and all of the children except

William, had accumulated. A meeting was held for the purpose of discussing the unpaid salaries. The meeting was attended by plaintiff, her sons, her son-in-law D. E. West (the husband of Louise), and an attorney who was "handling the corporation affairs." The attorney suggested that the corporation "issue new stock to take care of those back salaries," and that the shares of stock be issued in joint tenancy. Pursuant thereto, the corporation issued 114 additional shares of stock on December 8, 1933, and it was determined that those shares should be distributed as follows: Fifty-eight to plaintiff, 32 to James, 14 to Louise, and 10 to Herman (defendant H. E. Blankinship). As a result of the issuance of said additional shares, the total stock of the corporation was increased to 364 shares, which shares were owned as follows: One hundred and eight by plaintiff, 82 by James, 64 by Louise, 60 by Herman, and 50 by William.

At the time of issuing the new shares of stock, the old certificates were cancelled and new certificates were issued for all the 364 shares. The 108 shares to which plaintiff was entitled were issued in her name and in the names of her children, in joint tenancy, as follows: Fifty-eight shares in the names of plaintiff and James; 30 shares in the names of plaintiff and William; 10 shares in the names of plaintiff and Herman; and 10 shares in the names of plaintiff and Louise. The 50 shares last above mentioned are the shares involved herein. The shares to which each son was entitled were issued in his name and the name of plaintiff as joint tenants. It does not appear how the shares to which Louise was entitled were issued. James continued to serve as president of the corporation. D. E. West, who had been secretary and treasurer of the corporation, continued to serve in those capacities, and Herman continued as an employee of the corporation. About 1943, dissension arose as between James on the one side and his brothers and sister on the other side. About that time Louise had a discussion with plaintiff regarding a proposed redistribution of the 58 shares of stock, among all the children, which shares had been issued in the names of plaintiff and James as joint tenants. Pursuant to that discussion, certificates representing various numbers of said 58 shares were issued in the names of plaintiff and the children as joint tenants. The certificate so issued in the names of James and his mother represented 27 shares. Thereafter, said 58 shares were reissued in the names of James and his mother as joint tenants. Also, about 1943, each son caused his stock, which

had been issued in joint tenancy in the names of himself and his mother, to be reissued in the names of himself and his wife in joint tenancy. About 1945 James ceased to be an officer or employee of the corporation. Herman became president of the corporation and he, together with William and Mr. West (who continued to serve as secretary and treasurer), conducted the business of the corporation thereafter. On March 2, 1949, plaintiff attended a stockholders' meeting where, for the first time, she was refused voting privileges by Herman, William and Louise on the 50 shares of stock which plaintiff had caused to be issued in her name and their names as joint tenants. Plaintiff at that time "demanded the stock back from all three" of them, and they did not comply with the demand. Thereafter, she served upon them a written demand for a reconveyance of the stock, and they did not comply with the demand.

Plaintiff testified that she never gave or sold her rights in the 50 shares of stock and she never intended to make a gift of the stock to her children; that she put the stock in joint tenancy with the children for convenience, in place of making a will, but she did not want them to have it as long as she lived, so she put it in joint tenancy.

Herman testified that in 1933 he put his 60 shares of stock in the names of himself and his mother as joint tenants and left those shares in such joint tenancy until 1943 when he caused the stock to be reissued in the names of himself and his wife; that in putting his stock in joint tenancy with his mother he did not intend to give up any interest therein; that he put the stock in her name for convenience; that, in causing the stock to be reissued in the names of himself and his wife, he felt that he had a right to put the stock in the name of anyone he saw fit, and his mother's joint-tenancy stock was not different from his own stock which was in joint tenancy.

Defendant Louise B. West, the daughter, testified that in 1943, when she and her mother were discussing the redistribution of her mother's stock, she (the daughter) considered that said stock, which was in joint tenancy and included the 50 shares involved herein, was her mother's stock. She also testified that the only reason she did not give the stock to her mother was that her mother might give it to someone else; that she did not think they could trust plaintiff with the stock even though the stock belonged to plaintiff.

James Blankinship testified that in 1933, when they had the meeting regarding the issuance of additional stock, the

attorney for the corporation suggested that the stock be issued in joint tenancy as a matter of convenience and to avoid "probate."

Appellants contend, as above stated, that the findings to the effect that the 50 shares of stock were held in joint tenancy for convenience only were not supported by the evidence. They argue that a transfer of property into joint tenancy "for the purpose of avoiding probate is a gift *inter vivos* and irrevocable." ██ The question as to the intent of the plaintiff in causing the certificates of stock to be issued in the names of herself and defendants was one of fact for the determination of the trial court. ██ It appears that for more than 10 years preceding 1943 all the stock of the corporation was held in joint tenancy. The plaintiff testified to the effect, as above shown, that she put the stock in joint tenancy for convenience. In 1943 the sons, whose stock had theretofore been held in joint tenancy with the mother, caused their stock to be reissued to exclude the name of the mother and to include the names of their wives. It is clear that they considered that their stock was held in joint tenancy with the mother for convenience. It could reasonably be inferred that the stock of the mother was also held in joint tenancy for convenience. It is clear that the daughter considered that the stock involved here was owned by the mother. The evidence amply supports the findings and the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.